WHITE TOOL AND MACHINE CO., et al., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent White Tool & Machine Co. v. Commissioner
Docket Nos. 1209-78, 1861-78, 1866-78, 1867-78.
United States Tax Court
T.C. Memo 1980-443; 1980 Tax Ct. Memo LEXIS 145; 41 T.C.M. (CCH) 116; T.C.M. (RIA) 80443; September 30, 1980, Filed James D. O'Connell, for the petitioners. Thomas E. Ritter, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In these consolidated cases, respondent determined deficiencies and additions to tax under section 6651(a) [2] in the following amounts: Docket
Addition to Tax
No.
Petitioner
Year
Deficiency
(sec. 6651(a))
1209-78
White Tool and
[2] 1973
$ 34,346.42
$ 1,717.32
Machine Co. [1]
[2] 1974
76,360.87
19,090.22
1861-78
Roger S. White and
1973
2,514.41
0
Elaine J. White
1974
4,282.64
0
1866-78
Stephen White and
1973
29,758.23
2,517.89
Elaine D. White
1974
63,765.58
0
1867-78
Gary R. White and
1973
2,956.00
0
Kathryn M. White
1974
4,638.99
0
*148 Due to concessions by the parties, the issues remaining for decision are: 1. Whether respondent abused his discretion under section 482 by allocating to White Tool and Machine Co. (tool and Machine) rents which exceed an arm's-length rate, as computed under the regulations, paid by that corporation (a) to White & Sons Rental, Inc. (Rental) in fiscal 1974 for the use of equipment and (b) to White Charter Services, Inc. (Charter) in fiscal 1973 and 1974 for the use of vehicles and an airplane. Alternatively, whether the rents allocated under section 482 are deductible as ordinary and necessary business expenses within the meaning of section 162. 2. Whether respondent abused his discretion under section 482 by allocating to Tool and Machine, Rental, and Stephen White (Stephen) for the tax years in issue interest income and deductions, as computed under the regulations, which are attributable to non-interest-bearing promissory notes given by Rental to Tool and Machine and by Stephen to Rental in exchange for real property. 3. Whether the rents allocated to Tool and Machine under section 482 constitute constructive dividends under sections 301 and 316 to Stephen, Gary R. White *149 (Gary), and Roger S. White (Roger) in proportion to each of their ownership of Tool and Machine stock. 4. Whether respondent properly determined delinquency penalties under section 6651(a)(1) against Tool and Machine for fiscal 1973 and 1974 and against Stephen and Elaine D. White (Elaine) for 1973. FINDING OF FACT Petitioner Tool and Machine, a Michigan corporation, was located in Taylor, Michigan, when it filed its petition. Tool and Machine filed both its Federal income tax return for the fiscal year ended November 30, 1973, and, together with Rental and Charter, a purported amended consolidated return for the fiscal year ended November 30, 1974, with the Internal Revenue Service Center, Covington, Kentucky. When they filed their petitions, the individual petitioners were all legal residents of Michigan. They filed their Federal income tax returns for 1973 and 1974 with the Internal Revenue Service Center, Covington, Kentucky. In 1956, Tool and Machine was incorporated by Stephen, its sole shareholder. As of November 30, 1973, and during fiscal 1973 and 1974, its stock was held 80 percent by Stephen and 10 percent each by Stephen's sons, Gary Roger. Tool and Machine, *150 which was engaged in the fabrication of metal parts, maintained production facilities at Taylor and at Gaylord, Michigan, during all times relevant here. On November 24, 1970, Rental was incorporated. During 1970 through 1974, its stock was held 80 percent by Stephen, and 10 percent each by Gary and Roger. On November 25, 1970, Charter filed articles of incorporation. During 1970 through 1974, its stock was held 70 percent by Stephen and 10 percent each by Elaine, Gary, and Roger. The principal place of business for each of the corporate entities was 8135 South Telegraph Road, Taylor, Michigan. Tool and Machine, Rental, and Charter each maintained its books and records on the basis of a fiscal year ended November 30. In 1970, Stephen, Gary, and Roger comprised the board of directors of each company. They were, respectively, president, vice-president, and secretary of each company. During the periods in issue, these three individuals comprised the board of directors of Tool and Machine, and continued to hold the same offices in Tool and Machine and Charter. Stephen was also president of Rental. At a board of directors meeting of Tool and Machine held November 28, 1970, Stephen, *151 Gary, and Roger voted unanimously to transfer to Rental operating equipment of Tool and Machine with a cumulative cost of $255,595.86 and a cumulative book value of $170,227.71. At the same meeting, they authorized transfer of vehicles and an airplane with a cumulative cost basis of $21,274.48 and a cumulative book vaoue of $16,478.39 from Tool and Machine to Charter. At a board of director meeting held December 1, 1970, Rental authorized acquisition of certain personal property from Tool and Machine. At a board of directors meeting held December 8, 1970, Charter authorized purchase of certain vehicles and an airplane from Tool and Machine. Tool and Machine received no consideration for the transfer of any of these items. Both Rental and Charter depreciated the items on the same basis as had Tool and Machine. During fiscal 1973 and 1974, Rental's sole business was leasing equipment to Tool and Machine. During that period, Charter's sole business was leasing trucks, automobiles, and an airplane to Tool and Machine. In those years, Rental leased to Tool and Machine property including all of the items transferred on November 28, 1970, as well as three additional items with a cumulative *152 cost basis of $12,535.13. Rental was responsible for major repairs. In 1973 and 1974, Charter leased to Tool and Machine property which included the following items: Item
Date Acquired
Cost
72 pickup truck
Jan. 1972
$ 2,712.14
70 Piper aircraft
1970
31,500.00
Ford wagon
Aug. 1972
1,800.00
Mercury
Dec. 1971
4,600.00
Ford pickup
Apr. 1973
2,800.00
$ 43,412.14
At the board of directors meeting on November 28, 1970, Tool and Machine approved the sale of real estate located at 8135 South Telegraph Road, Taylor, Michigan (Taylor real estate) to Rental in exchange for a promissory note, dated December 1, 1970, in the amount of $200,000. The note provided for monthly payments of $1,000 beginning December 1, 1980. No interest was payable. Rental transferred the Taylor real estate to Stephen in exchange for a promissory note dated December 2, 1970, in the amount of $200,000. The note provided for monthly payments of $1,000 beginning December 1, 1980. No interest was payable. Stephen owned an airplane which he leased to Rental for $5,800 in 1974. He also owned certain pieces of operating equipment which he provided to Tool and Machine without *153 charge in 1973 and 1974. On its fiscal 1973 and 1974 Federal corporate income tax returns, Tool and Machine paid and deducted as rental expenses the following amounts: 1973
1974
Charter
$ 110,000
$ 140,000
Rental
15,000
91,000
Stephen and Elaine
2,400
[1] 2,400
Lakeside Fence Co.
3,000
3,000
$ 130,400
$ 236,400
Of the fiscal 1974 payments to Charter, $30,000 was paid on November 29, the day before the end of the fiscal year. On their fiscal 1973 and 1974 returns and purported returns, Tool and Machine, Rental, and Charter reported the following amounts as taxable income or losses, and as current year income or net operating losses: 1973
Taxable Income
(or Loss) Before
Taxable Income
fore Net Operating
(or Loss)
Loss
Tool and
Machine
($ 18,862.66)
[1] ($ 7,085.32)
Rental
( 45,199.43)
( 13,691.63)
Charter
( 8,412.30)
( 2,099.63)
Consolidated
( 55,315.66)
( 5,717.85)
1974
Taxable Income
(or Loss) Before
Taxable Income
Net Operating
(or Loss)
Loss
Tool and
Machine
($ 2,526.43)
$12,142.92
Rental
[2] 2,098.10
47,297.53
Charter
( 17,212.67)
( 8,800.37)
Consolidated
[3] 25,324.42
80,640.08
*154 The 1973 joint Federal income tax return of Stephen and Elaine was dated May 22, 1974, and stamped received May 28, 1974, by the Internal Revenue Service Center. It was enclosed in an envelope postmarked May 24, 1974. Tool and Machine filed a corporate income tax return for fiscal 1973 dated February 15, 1974, with the Internal Revenue Service Center, Covington, Kentucky. The envelope enclosing the return was postmarked March 8, 1974, and the return was stamped received March 11, 1974. Tool and Machine, together with Rental and Charter, filed a corporate income tax return dated August 2, 1976, entitled "consolidated amended return" for fiscal 1974 with the Internal Revenue Service Center, Covington, Kentucky, on September 1, 1976. The return was enclosed in an envelope post-marked August 30, 1976. The Internal Revenue Service received no other fiscal 1974 return *155 for Tool and Machine. In the notice of deficiency issued November 30, 1977, to Tool and Machine, respondent characterized rental payments to Charter and Rental as not at arm's-length terms. Arm's-length charges were computed by the revenue agent under section 1.482-2(c), Income Tax Reg., as follows: Charter
Rental
1973
1974
1974
Depreciation
$ 7,674.91
$ 7,908.22
$ 27,797.68
3 percent of depreciable
basis
1,302.36
1,302.36
8,043.92
Direct and indirect expenses: Repairs
1,072.27
4,841.74
1,862.52
Rent
1,247.84
1,199.05
0
Taxes
3,244.79
3,651.64
6,915.96
Other
6,713.56
11,920.51
1,326.31
Arm's-length rent
$ 21,255.73
$ 30,823.52
$ 45,946.39
These were then subtracted from rent expenses deducted for each year to derive excess rents as follows: Charter
Rental
1973
1974
1974
Rent deducted
$ 100,000.00
$ 140,000.00
$ 91,000.00
Arm's-length rent
(21,255.73)
(30,823.52)
(45,946.39)
Excess rent
$ 88,744.27
$ 109,176.48
$ 45,053.61
Relying on section 482, respondent thus allocated to Tool and Machine rental income of $88,744.27 for fiscal 1973 and $154,230.09 for fiscal 1974. *156 [3] Alternatively, he disallowed rental expenses in the same amounts as not constituting ordinary and necessary business expenses under section 162. In notices of deficiency issued on the same date to the individual petitioners, respondent determined dividend income in the following amounts attributable to non-arm's-length transactions between Tool and Machine, on the one hand, and Charter and Rental, on the other: 1973
1974
Stephen and Elaine D. White
$ 70,995.51
$ 123,384.07
Gary R. and Kathryn M. White
8,874.43
15,423.00
Roger S. and Elaine J. White
8,874.43
15,423.00
He further determined that, under sections 61 and 482, Tool and Machine earned $10,000 interest income from Rental for each year in issue and that Stephen and Elaine were entitled to an additional $10,000 interest expense for each year. Additions to tax under section 6651(a) were asserted against Tool and Machine at the rates of 5 percent for fiscal 1973 and 25 percent for fiscal 1974. A delinquency penalty under section 6651(a) at the rate of 10 percent was *157 asserted against Stephen and Elaine for 1973. On March 30, 1979, Rental entered into a lease covering in part certain machines with Northeast Michigan Manpower Consortium of Onaway, Michigan, a CETA program training school (the CETA lease) for an annual rental of $28,980. The lessee was to pay for equipment repairs. OPINION 1. Allocation of Excess Rent under Section 482
During 1973 Charter rented to Tool and Machine two trucks, two automobiles, and an airplane with a cost basis of $43,412.14 and a depreciated base of $30,099.75 in 1972 and $25,224.84 in 1973. The rental was $110,000 in 1973 and $140,000 in 1974. Respondent determined pursuant to section 1.482-2(c), Income Tax Regs., that the fair rental of the property was $21,255.73 in fiscal 1973 and $30,823.52 in fiscal 1974, reallocating to Tool and Machine $88,744.27 and $109,176.48 for fiscal 1973 and 1974, respectively. Similarly, Rental rented to Tool and Machine certain equipment, and Tool and Machine paid Rental $15,000 in 1973 and $91,000 in 1974 for the use of the property. Respondent determined that the arm's-length fair rental value of the equipment was $45,946.39 per annum, reallocating $45,053.61 *158 of the rent paid in 1974. By deducting the excess rents, respondent argues, Tool and Machine transformed its taxable income into operating losses for these years. Because the increases in the income of Rental and Charter were offset by losses and a tax credit, none of the entities paid income tax during the period in issue. To clearly reflect income, respondent allocated to Tool and Machine the amounts deemed excess rental income in the hands of Charter and Rental for those tax years. Petitioners maintain that the amounts paid represent reasonable charges. We uphold respondent's determination in this respect. [4]
Section 482 authorizes the Secretary (and by delegation the Commissioner or district director) to allocate gross income and deductions between or among "two or more organizations, trades, or businesses * * * owned or controlled directly or indirectly by the same interests" if he determines that such *159 an allocation is "necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses." Tool and Machine, Rental, and Charter were owned and directed by Stephen and his sons except that Stephen's wife, Elaine, owned 10 percent of the Charter stock. Such domination by a single family is sufficient to bring the corporations under section 482, compare South Texas Rice Warehouse Co. v. Commissioner, 366 F.2d 890, 894 (5th Cir. 1966), affg. 43 T.C. 540 (1965), cert. denied 386 U.S. 1016 (1967), and we do not understand petitioners to contend otherwise. Thus, the Commissioner, in order to determine "true taxable income," was authorized to reallocate income and deductions among the several entities so that, in general terms, the rentals will reflect an arm's-length charge. Sec. 1.482-2(c), Income Tax Regs. In making such an allocation, the general standard is that of "an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer." Sec. 1.482-1(b)(1), Income Tax Regs.
With respect to leases of tangible property between controlled taxpayers, sec. 1.482-2(c), *160 Income Tax Regs., specifically authorizes the district director to make allocations to reflect an arm's-length charge. If neither owner nor user was in the trade or business of renting property and if the taxpayer does not establish a more appropriate charge under specified standards, theregulations authorize the district director to determine the arm's-length charge according to a formula set forth, in pertinent part, in subdivision (ii) of paragraph (c)(2) of that section. That formula in effect allows a net profit of 3 percent of the cost basis to a taxpayer after deducting from gross rental allowable depreciation on the rented property as well as direct expenses, such as taxes and insurance, incurred by the taxpayer with respect to the property. An owner or user is considered to be in the trade or business of renting property if "it engages in the trade or business of renting property of the same general type as the property in question to unrelated parties." Sec. 1.482-2(c)(2)(i), Income Tax Regs.
This court has upheld the validity of section 1.482-2(c), Income Tax Regs.Fegan v. Commissioner, 71 T.C. 791, 806-807, 812 (1979). We must sustain the determination *161 under that regulation unless unless it is arbitrary, capricious, or constitutes an abuse of discretion. Spicer Theatre, Inc. v. Commissioner, 346 F.2d 704, 706 (6th Cir. 1965), affg. 44 T.C. 198 (1964); Ballentine Motor Co. v. Commissioner, 321 F.2d 796, 800 (4th Cir. 1963), affg. 39 T.C. 348 (1962); R.T. French Co. v. Commissioner, 60 T.C. 836, 850 (1973); Ach v. Commissioner, 42 T.C. 114, 126 (1964), affd. 358 F.2d 342 (6th Cir. 1966), cert. denied 385 U.S. 899 (1966). During the period in issue, none of the corporate entities rented property of the types covered by the leases to unrelated parties. Hence respondent properly relied on the regulation to compute arm's-length charges and thereby derive excess rentals. Petitioners have not proved more appropriate charges under the arm's-length standard. Nor have they shown respondent's determination to be unreasonable. In order to demonstrate the lack of a tax avoidance purpose, petitioners note Stephen's testimony that Rental and Charter were formed for the business purposes of "[expanding] our horizons" *162 and, in the case of Charter, limiting liability for vehicular and aircraft accidents. But the tax avoidance here at issue does not stem from the formation of Rental and Charter but from the pricing of the rental transactions. Moreover, respondent may make section 482 allocations in the absence of a purpose to avoid taxes so long as such allocations are necessary to reflect true taxable income. Sec. 1.482-1(c), Income Tax Regs.
Citing Murphy v. Commissioner, 231 F.2d 639 (6th Cir. 1956), revg. and remg. 22 T.C. 1341 (1954), to the effect that the predecessor of section 482 was designed to obviate distortion of income caused by shifting items among related businesses, petitioners argue that no distortion has occurred. Specifically, they note respondent's position that the copy of the purported fiscal 1974 return (which respondent maintains, and we have found, was not filed) for Tool and Machine shows a tax liability essentially the same as that derived from the amended consolidated return for that year. [5] However, the three corporate entities were not entitled to file a consolidated return and may not rely on the tax liability computed in one. *163 To be entitled to file a consolidated return, corporations must be members of "an affiliated group of corporations." Sec. 1501.An affiliated group is defined in part as comprising "one or more chains of includible corporations conncected through stock ownership with a common parent corporation." Sec. 1504(a). Because they lack a common parent corporation, corporations whose stock is owned by the *164 same individuals are not entitled to file a consolidated return. Ray Engineering Co. v. Commissioner, 42 T.C. 1120, 1122 (1964), affd. per curiam 347 F.2d 716 (3d Cir. 1965). The stock of Tool and Machine, Rental, and Charter was owned by individuals who are members of the same family, not by a common corporate parent. Since they were not affiliated corporations within the meaning of section 1504(a), they were not entitled to file a consolidated return for fiscal 1974. To support their view that the rentals paid Charter and Rental were reasonable, petitioners cite Stephen's testimony on the value of certain leased items. He stated that a Lucas boring mill was "worth at least $150,000" at time of trial and in 1973 and 1974 when leased by rental "no more than 15 to 20 percent less" and that the value of a 1970 Piper Cherokee airplane purchased in December 1970 had not fluctuated substantially from that time until the time of trial from its $31,500 cost. Petitioners thus rely on A. & A. Tool & Supply Co. v. Commissioner, 182 F.2d 300 (10th Cir. 1950), revg. and remg. a Memorandum Opinion of this Court, in which the Tenth Circuit found *165 that the taxpayer carried its burden of proof by introducing uncontradicted owner-testimony as to reasonable value.But that case is not apposite. Here the parties introduced expert testimony and other evidence and Stephen was shown to have no expertise. Furthermore, petitioners' burden of proof here is greater than that in the Tenth Circuit case as petitioners must prove respondent's section 482 allocation to be arbitrary and unreasonable. Petitioners also bring to our attention several cases holding that rent representing an arm's-length charge is deductible under section 162 or not allocable under section 482. Mackinac Island Carriage Tours, Inc. v. Commissioner, 455 F.2d 98 (6th Cir. 1972), revg. a Memorandum Opinion of this Court: Rubin v. Commissioner, 429 F.2d 650 (2d Cir. 1970); Quinn v. United States, an unreported case ( D. Md. 1976, 40 AFTR2d 77-5097, 77-1 USTC par. 9369); Griffith Motors v. Commissioner, T.C. Memo. 1977-84. But petitioners have not shown that the facts here are comparable to the facts in those cases. Because we uphold respondent's determination that the rents in the instant case do *166 not represent arm's-length charges, our holding is consistent with the reasoning of those cases. To characterize the fiscal 1974 Rental lease as reasonable, petitioners rely primarily upon the testimony of their expert witness, Jerry Stonisch (Stonisch). [6] We are not convinced by Stonisch's testimony. [7] The record contains a list of rented equipment attached to Rental's return as a depreciation schedule, a list included in the minutes of Tool and Machine's board of directors meeting of November 28, 1970, authorizing the transfer of equipment to Rental, and a stipulation of facts. The stipulation recites that this last list "included" the property leased by Rental to Tool and Machine. In addition, the record contains lists prepared by Stephen "in the last couple days" before the trial. Finally, another list is contained in the CETA lease executed in 1979. *167 We are not satisfied that Stonisch in reaching his opinion as to a fair rental for the property took into account only the equipment rented to Tool and Machine in 1974. Stonisch testified that he examined the equipment only during the "last two days" prior to the trial. At that time the equipment was in three different locations. While we recognize that some of the confusion may be due to his failure to take the time to prepare a written report carefully documenting his views, we think it highly likely that he based his appraisals on items not in use in 1974. [8]
*168 Valuing the lease as a percentage of the fair market value of the covered equipment, Stonisch first estimated such value as of June 1979 and then deducted 20 percent to arrive at a 1974 value of approximately $580,000. This deduction from his estimate of 1979 value was made on the theory that this equipment was increasing in value. He deducted 20 percent because, he explained, "'74 business conditions were not as good as they are today." In our view, this method of determining 1974 value, based on such a broad generalization, is unreliable. Next, Stonisch determined annual rental as 25 percent of fair market value on the theory that the lessor would want to recover cost for all but large pieces over a 3 to 4 year lease term even though his estimate of the value of the equipment assumed its value was increasing.However, he admitted that the equipment might well be leased for a period longer than 4 years, describing the lease term as "negotiable." Moreover, he applied the 25-percent figure even to pieces of large equipment, such as the boring machines, which he stated "could go on for 50 years." Specifically, he described a monthly rental of $2,000 to $3,000 for a Lucas boring *169 mill at the Taylor plant, the fair market value of which he placed at between $110,000 to $130,000. We are not satisfied that petitioner's rule of thumb has any basis in economic reality. Also, the leases which Stonisch treated as comparable vary from the instant case in the respect which he himself described as important--control of equipment maintenance. The banks and insurance companies for which he has valued "possibly a dozen or so" 2 to 4-year leases of comparable equipment do not control maintenance whereas Rental could do so. According to Stonisch, the life span of this equipment, specifically of boring machines and punch presses, depends largely on maintenance. Yet he indicated that he did not take into account this variation in maintenance control when he valued the lease. Petitioners also rely on the 197. CETA lease which for $28,980 covers, Stephen stated, "around 15, 20 percent" in value of the equipment leased by Rental to Tool and Machine in 1974, as well as three welders which cost $2,900 to $3,000. They contrast the repairs provisions of the two leases: Rental paid for major repairs whereas the CETA lessee pays for repairs. Since a substantial percentage *170 of fiscal 1974 rent is paid for use of a small percentage of the same equipment at less favorable terms, they argue, the CETA lease demonstrates by contrast the reasonableness of the lease in issue. This evidence with respect to a 1979 CETA lease is too remote to be probative.Moreover, other than testimony that market conditions in 1974 were less favorable than in 1979, there is no indication of relative demand for equipment in the two periods. Petitioners' apparent view that the lease is an admission by an opposing party since both CETA and the Internal Revenue Service are branches of the United States Government is without merit. Based on Stephen's testimony, petitioners also argue that Tool and Machine paid $54,000 annual rent to Rental and that $39,000 of the $91,000 paid in fiscal 1974 was a late payment of the earlier year's rent. [9] They therefore claim that excess rent for that year should be computed by subtracting from $54,000 the amount deemed an arm's-length charge. The parties, however, have stipulated that Tool and Machine deducted $91,000 as payments to Rental in fiscal 1974. Hence respondent properly subtracted amounts representing arm's-length rentals from *171 this sum. With respect to the Charter lease, petitioners allege that respondent failed to include in his computation under section 482 certain expenses which were incurred and allowed on audit. Yet his computation, set forth in our Findings of Fact, indicates that he included all such items except for salaries and interest. The regulation expressly excludes interest from the computation. Sec. 1.482-2(c)(2)(ii)(c), Income Tax Regs. Petitioners have not shown that the salaries or any other items not included were attributable to the lease. See sec. 1.482-2(b)(8) and (c)(2)(ii)(d), Income Tax Regs. According to petitioners Charter paid Stephen, Gary, Roger, and Elaine combined salaries of $88,004 and $99,063 in fiscal 1973 and 1974 in part for managing Charter and in part for driving and piloting vehicles leased to Tool and Machine. The latter services were, petitioners maintain, provided to Tool and Machine pursuant to the lease. The management services are, in petitioners' view, also attributable to the Tool and Machine lease because "everything it [Charter] *172 did, it did for the benefit of" Tool and Machine. No written lease was introduced in evidence. Testifying that he thought a lease had existed but that it had not been found, Stephen stated that the lease covered personnel as well as vehicles. Even if petitioners thereby established Charter's obligation to provide services, they have not shown that the value of such services equaled the amounts paid as salaries. Stephen testified vaguely that each worked "probably around 40 to 60, 70 hours a week". However, the record contains no indication of either the number of hours during which the four drove or piloted vehicles or the airplane and performed management services for Charter or of the value of their services. Although Rental and Tool and Machine paid petitioners no salaries in 1973 and 1974, Stephen, Gary, and Roger were or appeared to have been president, vice-president, and secretary of both corporations during this period and apparently performed services as such. In fact, the record suggests that petitioners treated not Charter but Tool and Machine as their employer. Thus on his original returns for 1973 and 1974, Stephen listed his occupation as "White Tool (Pres. *173 )." Attached to Gary's 1973 and 1974 Federal income tax returns were letters in which Stephen in effect characterized as employee business expenses certain transportation costs deducted by Gary. These letters, which did not mention Charter, were written on Tool and Machine stationery. On this record, we cannot find that the full amount or any specific lesser amount of the salaries is allocable to the Tool and Machine lease under sec. 1.482-2(c)(2)(ii)(d), Income Tax Regs. 2. Section 482 Interest Allocations
On December 1, 1970, Tool and Machine sold Rental the Taylor real estate in exchange for a promissory note. On December 2, 1970, Rental sold Stephen the same property also in exchange for a promissory note. Each note provided for payments of principal in the amount of $200,000 at the rate of $1,000 per month beginning December 1, 1980. Neither provided for interest payments. Under section 1.482-2(a)(2)(iii)(B)(2), Income Tax Regs., [10] respondent treated interest of $10,000 allocable for each controverted taxable year from Rental to Tool and Machine and from Stephen to Rental. He further maintains that Rental and Stephen are entitled to interest deductions *174 in the same amount.We uphold the allocation of interest income to Tool and Machine. [11]
*175 As discussed above, Tool and Machine and Rental are members of a controlled group within the meaning of section 482. If a member of a controlled group of corporations loans money to another member without interest, the regulations under section 482 authorize the district director to allocate amounts to reflect an arm's-length interest rate. Secs. 1.482-1(d)(4) and 1.482-2(a)(1), Income Tax Regs. For a creditor who charges no interest and who is not regularly engaged in the business of lending to unrelated parties loans of the same general type as that in issue, the arm's-length charge for amounts accrued before July 24, 1975, shall be deemed to be 5 percent per annum unless the taxpayer establishes a more appropriate rate under standards set forth in the regulations. Sec. 1.482-2(a)(2)(iii)(B)(2), Income Tax Regs. Agreeing with the holding of several circuit courts, this Court has upheld sections 1.482-1(d)(4) and 1.482-2(a)(1), Income Tax Regs.Fitzgerald Motor Co. v. Commissioner, 508 F.2d 1096, 1100-1101 (5th Cir. 1975), affg. 60 T.C. 957 (1973); Kerry Investment Co. v. Commissioner, 500 F.2d 108, 109 (9th Cir. 1974), affg. in *176 part and revg. in part 58 T.C. 479 (1972); Kahler Corp. v. Commissioner, 486 F.2d 1, 3-5 (8th Cir. 1973), revg. and remg. 58 T.C. 496 (1972); B. Forman Co. v. Commissioner, 453 F.2d 1144, 1156 (2d Cir. 1972), affg. in part and revg. in part 54 T.C. 912 (1970), cert. denied 407 U.S. 934 (1972); Latham Park Manor, Inc. v. Commissioner, 69 T.C. 199, 211-216 (1977), affd. per order (4th Cir., Jan. 28, 1980). Petitioners have neither introduced evidence at trial nor advanced arguments on brief to dispute the interest allocations. Accordingly, respondent's allocation, which is supported by the regulations and the foregoing authorities, is sustained. 3. Constructive Dividends
To the extent that Tool and Machine's rental payments to Rental and Charter exceed an arm's-length charge for the leased property, respondent characterizes the payments as constructive dividends to Stephen, Gary, and Roger, and contributions of capital by these three petitioners to Charter and Rental. He thus included the excess payments in income for each of these petitioners in proportion to that individual's *177 ownership of Tool and Machine stock. We find for petitioners on this issue. Any distribution of property made by a corporation to a shareholder with respect to its stock and out of corporate earnings and profits is taxable to the shareholder. Secs. 61, 301(a) and (c), 316(a). A distribution by a corporation to a brother-sister corporation is deemed a dividend to the common shareholder only if the distribution directly benefits the shareholder. Rushing v. Commissioner, 52 T.C. 888, 893-894 (1969), affd. on other issues 441 F.2d 593 (5th Cir. 1971). As respondent observes, payment and deduction of excess rentals reduced the tax liability of Tool and Machine without increasing that of either Rental or Charter, which were loss corporations. Without more, a reduction in taxes for the corporations does not, in our view, constitute a direct benefit to the shareholders justifying constructive dividend treatment. Respondent has another remedy to attack such a tax avoidance device-an allocation under section 482. Indeed, the tax advantage which petitioner sought is eliminated by our determination that excess rental payments were correctly allocated to Tool *178 and Machine under that provision. Moreover, this primary adjustment in Tool and Machine's taxable income requires that a correlative adjustment be deemed to have been made with respect to Rental and Charter even though the adjustment had no tax effect on the taxpayer. [12] The trial record, as we view it, will not support a conclusion that, with the tax consequences thus eliminated, the transfer of capital from Tool and Machine to Rental or Charter gave the individual shareholders any economic benefit. If there was any benefit, it was derivative. Respondent cites Engineering Sales v. United States,510 F.2d 565 (5th Cir. 1975). Sustaining *179 the Commissioner's section 482 allocation of income from a marketing corporation to a commonly controlled manufacturing corporation, the Fifth Circuit treated dividends from the former corporation to the individual taxpayers' children as paid out of the reallocated amount. Noting that respondent might have viewed the transaction as intended to provide the children with income not taxable to the parents, the court upheld the Commissioner's determination that the dividends were constructively distributed to the taxpayers, who owned all the stock of the manufacturing corporation (510 F.2d at 569-570). In contrast to the instant case, the amounts in Engineering Sales were in fact transferred from one of the commonly controlled corporations as dividends and the taxpayers directly benefited by the distribution to their children. As respondent maintains, a distribution by one corporation to a brother-sister corporation is taxable as a dividend to the common shareholder if the distribution was made for the benefit of the shareholder. Sparks Nugget, Inc. v. Commissioner,458 F.2d 631 (9th Cir. 1972), affg. a Memorandum Opinion of this Court, cert. denied *180 subnom.R. L. Graves v. Commissioner,410 U.S. 928 (1973); Sammons v. United States,433 F.2d 728 (5th Cir. 1970), cert. denied 402 U.S. 945 (1971); R.T. French Co. v. Commissioner,60 T.C. 836, 854-856 (1973). He notes that when corporate control is coupled with a lack of business purpose for a transaction between commonly controlled corporations, courts have imputed contructive dividends to controlling shareholders. Sparks Nugget v. Commissioner,T.C. Memo. 1970-74, affd. 458 F.2d 631 (9th Cir. 1972), cert. denied subnom.R. L. Graves v. Commissioner,410 U.S. 928 (1973); Knipe v. Commissioner,T.C. Memo. 1965-131, affd. per curiam subnom.Equitable Publishing Co. v. Commissioner,356 F.2d 514 (3d Cir. 1966), cert. denied 385 U.S. 822 (1966). The constructive dividends upheld in Sammons,Sparks Nugget, and Knipe, however, were not attributable to amounts allocated under section 482. In R.T. French Co., the asserted constructive dividend was attributable to income allocated under *181 section 482 from brother-sister corporations. Characterizing any benefits to the corporate parent as derivative, this Court rejected the Commissioner's theory that the taxpayer paid its parent a constructive dividend out of such income by granting its brother-sister corporations free use of the taxpayer's intangibles. R.T. French Co. v. Commissioner,supra at 854-856. 4. Additions to Tax under Section 6651(a)(1)
Respondent asserted additions to tax under section 6651(a)(1) against Stephen and Elaine for 1973 and against Tool and Machine for fiscal 1973 and 1974. According to petitioners, Stephen and Elaine as well as Tool and Machine timely filed returns for the periods at issue and are, therefore, not liable for the section 6651(a)(1) penalties. We uphold all of respondent's determinations on this issue. Section 6651(a)(1) [13] provides for additions to tax if, in part, individual or corporate income tax returns are not filed "on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause." Individual returns made on the basis of the calendar year *182 are due on or before April 15 of the following year. Corporate returns made on the basis of a fiscal year are due on or before the 15th day of the third month following the close of the fiscal year. Sec. 6072(a) and (b). Because Stephen and Elaine filed on the basis of the calendar year, their joint Federal income tax return for 1973 was due by April 15, 1974. Yet it was received by the Internal Revenue Service on May 28, 1974, in an envelope postmarked *183 May 24, 1974. Indeed, the return itself was not signed by Stephen and Elaine until May 22, 1974. They requested to extension of time for filing and have neither argued nor shown that their failure to timely file was due to reasonable cause.
Tool and Machine's 1973 return was dated February 15, 1974, the 15th day of the third month after the close of the corporation's final year. However, the return was not received by the Internal Revenue Service until March 11, 1974, in an envelope postmarked March 8, 1974, after the February 15, due date. Tool and Machine requested no extension of time for filing the 1973 return and has made no showing of reasonable cause for late filing. According to petitioners, the testimony given by Stephen and Mary Granger showed that the returns were signed on the date on the return and mailed the same day. However, Mary Granger's testimony as to the mailing date did not by its terms apply to the 1973 return. Stephen merely stated that the return was dated when he signed it and that the date was accurate when signed. Moreover, petitioners would not be aided even by proof of timely mailing. Under section 7502(a), a return delivered after the due *184 date will nonetheless be treated as timely if, in part, the envelope in which it is enclosed bears a postmark dated on or before the prescribed date. Proof of the date the return was mailed is irrelevant in the case of an untimely postmark. Sec. 7502(a)(2)(A); S. Rept. No. 1625, 89th Cong., 2d Sess. (1966), 1966-2 C.B. 803, 804, 809, 814. Accord Sanderling, Inc. v. Commissioner,67 T.C. 176, 179-180 (1976), affd. on other issues 571 F.2d 174 (3d Cir. 1978) (to compute late filing penalty, sec. 7502 timely mailing-timely filing rule inapplicable to return mailed after due date). Drake v. Commissioner,554 F.2d 736, 738-739 (5th Cir. 1977); Sylvan v. Commissioner,65 T.C. 548, 551-554 (1975) (sec. 7502 applied to filing of Tax Court petitions). Given the dates of the untimely March 8, 1974, postmark and of the March 11, 1974, delivery to the Internal Revenue Service, proof of timely mailing is irrelevant. With respect to fiscal 1974, Tool and Machine, together with Rental and Charter, filed a purported amended consolidated return dated August 2, 1976, and received September 1, 1976, in an envelope postmarked *185 August 30, 1976. Respondent acknowledges receipt of no other fiscal 1974 return for Tool and Machine. Again there was no request for extension of time for filing and no showing of reasonable cause for late filing. Since the foregoing dates are later than the February 15, 1975, due date, the addition to tax is sustained. Petitioners claim that Tool and Machine earlier filed a corporate return for fiscal 1974, an undated and unsigned purported copy of which they introduced in evidence. Stephen testified that the date on the fiscal 1974 return was accurate when he signed. The tax return preparer, Mary Granger, stated at trial that she was present when Stephen signed the 1974 return. She further testified as follows: Q. Do you know what became of the returns after they were signed? A. I put them in an envelope, put a stamp on them, and they were put in the mail. Q. * * * Oh, how long after were they put in the mail? A. The same day. Internal Revenue Service records indicate receipt of no such fiscal 1974 corporate return for Tool and Machine. In our view, petitioners have not carried their burden of proving that Tool and Machine filed such a return. Moreover, inasmuch *186 as the purported copy of such return was not signed and dated, the testimony of Stephen and Mary Granger does not establish when such a return was, if ever, filed. Noting that the revenue agent received and used the purported copy of Tool and Machine's original fiscal 1974 return, petitioners criticize as inconsistent respondent's claim that the Internal Revenue Service never received such a return. There is no inconsistency between acknowledging delivery of a purported copy to the revenue agent during the course of an audit and denying that the return was filed. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. The following cases are consolidated herewith: Roger S. White and Elaine J. White, docket No. 1861-78; Stephen White and Elaine D. White, docket No. 1866-78; Gary R. White and Kathryn M. White, docket No. 1867-78.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. Fiscal year ended Nov. 30.↩
1. In an amendment to answer, respondent alleges liability for increased deficiencies and additions to tax for White Tool and Machine Co. as follows: Addition to Tax
Year
Deficiency
(sec. 6651(a))
1973
$ 38,372.18
$ 1,918.60
1974
83,402.18
20,850.55
The increases are attributable to a mathematical error, i.e., decreasing rather than increasing taxable income by the amount of a $4,193.51 adjustment and failing to disallow a net operating loss carryover under sec. 172 in the amount of $14,669.35 from fiscal 1973 to 1974 although all of it was offset by adjustments for fiscal 1973. ↩
1. On their 1973 and 1974 returns, Stephen and Elaine listed rents of $2,400 each for "Gaylord House."↩
1. In a document given the revenue agent during audit, Tool and Machine instead claimed losses of $14,669.35 and $2,892.01, respectively. ↩
2. Due to application of an investment credit, no tax was reported due. ↩
3. Due to application of an investment credit and a surtax exemption, no tax was reported due.↩
3. Despite correlative adjustments to Rental and Charter, no taxes were due and no dificiency notices issued.↩
4. Because we sustain respondent's determination under sec. 482, we do not reach the alternative issue whether excessive rentals paid to Rental and Charter constitute ordinary and necessary business expenses of Tool and Machine for fiscal 1973 and 1974.↩
5. When the revenue agent expanded his fiscal 1973 audit to include fiscal 1974, he requested, pursuant to Internal Revenue Service procedures, copies of the fiscal 1974 return for Tool and Machine.He conducted the audit and computed adjustments contained in the notice of deficiency based on the return provided, which was the purported individual corporate return. Although respondent states that no such return was filed with the Internal Revenue Service, he maintains that the notice of deficiency is based on the tax liability actually reported because the individual tax liability of Tool and Machine derived from the amended consolidated return, with adjustments for intragroup transactions, is essentially the same as that reported on the purported individual corporate return.↩
6. Although not required to support the reasonableness of his allocation under the regulations for the leases of either Rental or Charter, respondent introduced the testimony and report of Peter R. Bartolomei, an Internal Revenue Service appraiser. Because we have not relied on his valuation, we do not discuss petitioners' attempts to discredit his valuation of either the Charter or Rental lease. ↩
7. In presenting Stonisch's testimony, petitioner failed to comply with Rule 71(d)(2) of the Rules of this Court which is as follows: If not furnished earlier, each party who expects to call an expert witness shall furnish each other party and shall submit to the Court, not later than 15 days prior to the call of the trial calendar on which the case shall appear, a copy of all reports intended to be used in conjunction with the testimony of the witness at the trial of the case. Stonisch furnished no written report and left the impression that his views were hurriedly formed.↩
8. Petitioners describe some of this equipment as fully depreciated; indeed they have stipulated that it was depreciated with no reserve for salvage. Even if they had established such equipment was covered by the lease, respondent did not err by not including such equipment in the computation as the regulation (sec. 1.482-2(c), Income Tax Regs.↩) includes equipment costs only as depreciation and as 3 percent of the depreciable base. Similarly, petitioners claim that actual value of the machinery and the transportation equipment under the Charter lease exceeded depreciated value. Since they have not established such value, or an appropriate rental value, respondent properly relied on the formula in the regulations which, as we have discussed, does not consider fair market value of the rented property.
9. Thus they maintain that Tool and Machine failed to pay $2,000 of the rent due in fiscal 1974.↩
10. Sec. 1.482-2 Determination of taxable income in specific situations. (a) Loans or advances-- (2) Arm's length interest rate-- (iii) Safe haven rule for certain loans or advances existing before July 24, 1975. (B) If a creditor was not regularly engaged in the business of making loans or advances of the same general type as the loan, or advance in question to unrelated parties, the arm's length rate of interest to which paragraph (a)(2)(iii) of this section applies shall be for purposes of this paragraph-- (2) Five percent per annum simple interest if no interest was charged or if the rate of interest charged was less than 4, or in excess of 6, percent per annum simple interest, unless the taxpayer establishes a more appropriate rate under the standards set forth in paragraph (a)(2)(i) of this section. For purposes of the preceding sentence if the rate actually charged is greater than 6 percent per annum simple interest and less than the rate determined under the standards set forth in paragraph (a)(2)(i) of this section, or if the rate actually charged is less than 4 percent per annum simple interest and greater than the rate determined under the standards set forth in paragraph (a)(2)(i) of this section, then the rate actually charged shall be deemed to be a more appropriate rate under the standards set forth in paragraph (a)(2)(i) of this section. ↩
11. Although Rental is not a petitioner in this case, we note that respondent's interest allocations resulted in no net adjustment to Rental's income for either year. By allowing Stephen correlative adjustments, respondent has reduced the tax liability of Stephen and Elaine for 1973 and 1974. Therefore, we do not treat the adjustments with respect to Stephen as in issue and do not determine whether sec. 482 authorizes the allocation of interest income between Stephen and Rental.↩
12. Sec. 1.482-1(d)(2), Income Tax Regs., provides in part: If a correlative adjustment is not actually made because it would have no effect on the U.S. Income tax liability of the other member involved in the allocation for any pending taxable year, such adjustment shall nevertheless be deemed to have been made for the purpose of determining the U.S. income tax liability of such member for a later taxable year, or for the purpose of determining the U.S. income tax liability of any person for any taxable year.↩
13. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;↩